PEOPLE v HAACK

Docket No. 55458. Argued April 10, 1975 (Calendar No. 6).—Decided
    April 21, 1976.

Arthur J. Haack was convicted, on his plea of guilty, of second-
    degree murder in Recorder's Court of the City of Detroit, John
    R. Murphy, J. The defendant told the judge that he believed
    that the revolver he pointed at the deceased would not fire
    although he knew it was loaded and he intentionally pulled the
    trigger. The Court of Appeals, Lesinski, C. J., and Fitzgerald
    and Carland, JJ., affirmed (Docket No. 16895). The question is
    whether the record shows a factual basis for acceptance of the
    plea of guilty. Defendant appeals. *Held:*

1. Although the defendant's plea of guilty was accepted
    before the effective date of a revision of the court rule to
    provide for a determination of the factual basis of the plea, by
    previous judicial construction of the court rule and statute, in
    order to accept the plea the court must have found a factual
    basis to support the conclusion that a crime was committed and
    that the defendant participated in its commission.

2. Intent to kill is an element of the offense of murder and
    may be inferred by the trier of fact where the natural tendency
    of the defendant's behavior is to cause death or great bodily
    harm.

3. The standard to be applied in determining the adequacy of
    the factual basis is whether the trier of fact could properly
    convict on the facts as stated by the defendant. On the defend-
    ant's statement that he had pointed a revolver he knew was
    loaded at the deceased and intentionally pulled the trigger, a
    trier of fact could properly infer intent to kill, even though the
    defendant asserted that the shooting was accidental because he
    believed the revolver would not fire.

Affirmed.

1. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS.

Direct questioning of a defendant by the court on taking a plea of

REFERENCES FOR POINTS IN HEADNOTES

[1, 2, 5, 7] 21 Am Jur 2d, Criminal Law § 484 *et seq.*
[3, 4, 6] 40 Am Jur 2d, Homicide §§ 568–582.

guilty is required by court rule for the purpose of establishing the crime and the defendant's participation in the commission of the crime; this is a precaution against involuntary or induced false pleas of guilty and against subsequent false claims of innocence (GCR 1963, 785).

2. CRIMINAL LAW—PLEA OF GUILTY—FACTUAL BASIS.

No plea of guilty should be accepted by a court until facts sufficient to establish the defendant's guilt have been set out in the record.

3. HOMICIDE—MURDER—INTENT TO KILL.

Intent to kill is an element of murder which may be inferred by the trier of fact where the natural tendency of a defendant's behavior is to cause death or great bodily harm, even though the defendant may not have actually intended to kill the deceased.

4. HOMICIDE—MURDER—ELEMENTS OF CRIME.

A person who kills another is guilty of the crime of murder if the homicide is criminal, neither justifiable nor excusable, and if it is committed with "malice aforethought", the intention to kill, actual or implied, under circumstances which do not constitute excuse or justification or mitigate the degree of the killing to manslaughter; a killing may be murder even though the actor harbored no hatred or ill will against the victim and even though he acted on the spur of the moment.

5. CRIMINAL LAW—PLEA OF GUILTY—INFERENCES.

A factual basis for acceptance of a plea of guilty exists if an inculpatory inference can reasonably be drawn by a jury from the facts admitted by the defendant even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference.

6. HOMICIDE—SECOND-DEGREE MURDER—PLEA OF GUILTY.

A trial judge could properly reject a defendant's disclaimer of intent to kill and accept his plea of guilty of second-degree murder on the defendant's statement that he had pointed a revolver he knew was loaded at the deceased and intentionally pulled the trigger.

7. CRIMINAL LAW—PLEA OF GUILTY—ACCEPTANCE.

A plea of guilty may be accepted even though the defendant is unsure of his guilt and even where he denies his guilt if after careful inquiry the judge satisfies himself that there is a substantial factual basis for the plea and that the plea repre-

sents a well-considered and well-advised choice by the defendant.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training & Appeals, and *Arthur N. Bishop,* Assistant Prosecuting Attorney, for the people.

*State Appellate Defender Office* (by *Daniel J. Wright)* for defendant.

LEVIN, J. The question is whether the record shows a factual basis for a plea of guilty of second-degree murder.

Arthur Haack, charged with first-degree murder, pled guilty to second-degree murder. The Court of Appeals affirmed:[1]

"The facts recited by the defendant adequately establish second-degree murder as defined above. The defendant killed a man by intentionally pointing a loaded gun and firing that gun. He knew the gun was loaded. There was bad blood between the defendant and the decedent."

We affirm.

I

During the plea-taking colloquy, Haack said that on the night of the homicide an acquaintance gave him a .45-caliber revolver to carry in his coat pocket. There were four bullets in the cylinder. Haack placed one of the empty chambers under the hammer and the other immediately to the left

[1] The opinion of the Court of Appeals, filed December 7, 1973, Docket No. 16895, is unreported.

of it. He thought the cylinder rotated clockwise and that the hammer would strike an empty chamber if the gun was fired. He put the gun in his pocket.

At a party later that night the deceased, whom Haack had not met before, asked Haack why he had a gun. Haack responded "if you knew the people that I knew you would carry a gun too". Haack sought to terminate the conversation. The deceased moved away. Haack overheard another person urge the deceased to leave Haack alone. Then the deceased "turned and faced me and said that if I was such a big man with the gun why didn't I shoot him".

Haack described what followed:

"I figured this guy is pushing me far enough and I'm going to scare the hell out of him and let it go at that.

"I pulled the gun out and cocked the hammer and pulled the trigger. It fired.

"I found out that on a couple of makes of the older .45 revolvers that they spin counter clockwise instead of clockwise and that's what happened."

Haack contends his assertion to the judge that he believed the gun would not fire and he intended only to scare the deceased negates intent to kill, a requisite element of second-degree murder. He contends that while he intentionally pulled the trigger, the shooting was an accident. Alternatively, he contends that his belief the gun would not fire was reasonable and is a mitigating factor that reduces the offense to manslaughter.

The prosecutor responds that intent to kill can be inferred from the facts recited by Haack when he offered his plea. Haack pointed a gun he knew was loaded at the deceased and intentionally

pulled the trigger. The prosecutor characterizes Haack's action as "an erroneous Russian roulette". The natural tendency of such reckless behavior is to cause death or great bodily harm.

## II

Haack's plea of guilty was accepted[2] before the effective date of the general revision of GCR 1963, 785 providing in subsection 7(3) for a determination of the factual basis for a plea of guilty.[3]

---

[2] Haack was examined by the judge and offered his plea on January 29, 1973. The plea was taken under advisement. On February 13, 1973 the plea was accepted and Haack was sentenced to a prison term of 10–20 years.

[3] June 1, 1973 was the effective date of the general revision of GCR 1963, 785. 389 Mich liii. Haack's plea was accepted on February 13, 1973.

The court rule in effect at the time Haack's plea was accepted required the judge to examine the accused and "ascertain that the plea was freely, understandingly and voluntarily made, without undue influence, compulsion or duress, and without promise of leniency". GCR 785.3, effective January 1, 1963.

The foregoing language, which can be traced back to Court Rule No. 35A, added June 4, 1947, effective September 1, 1947 (318 Mich xxxix), was to be replaced effective January 1, 1967 by language requiring that the court "determine from the accused's own narration what the accused did at the time of the offense charged" and that "[i]f the accused's description of his actions at the time of the offense charged would not support a finding of guilt of the crime charged, the plea of guilty offered by the accused shall be rejected by the court". 378 Mich xxxix. However, by order of the Court dated November 16, 1966, the effective date of this amendment was "suspended until further notice". 378 Mich xliii.

On June 8, 1967 this Court "repealed effective instanter" the various amendments of rule 785 adopted since January 1, 1963. The Court advised the profession and bench generally that various persons and groups had been requested to assist in drafting recommendations for amendment of rule 785: "Pending submission and approval by the Court of such forthcoming amendments, the bench and bar will proceed in accordance with original Rule 785, in accordance with article 1 of the Constitution of 1963 and in accordance with such decisions of the United States Supreme Court and of the Supreme Court of Michigan as may be deemed applicable to the particular criminal matter at hand." 379 Mich xxxi.

Effective June 1, 1973 rule 785 was amended (389 Mich liii). Subsection 7(3) provided:

"(3) Determining Factual Basis for Plea.

While former rule 785 and the statute[4] did not explicitly require a determination that there was a factual basis, such a requirement was established by judicial construction of the rule and statute in *People v Barrows,* 358 Mich 267, 272; 99 NW2d 347 (1959):

"The direct questioning of a defendant by the trial judge on plea of guilty is required by the rule for the purpose of establishing the crime and the participation therein of the person pleading guilty. This is a precaution against involuntary or induced false pleas of guilty, and against subsequent false claims of innocence."[5]

"(a) The court shall not accept a plea of guilty or nolo contendere until it is satisfied that a crime was committed.

"(b) The court shall not accept a plea of guilty until it is satisfied that a crime was committed and, through personal interrogation of the defendant, that defendant participated therein.

"(c) If defendant's description of his actions and any otherwise admissible evidence presented to the court on the record during the plea taking proceedings would not substantially support a finding that defendant is in fact guilty of the charged offense or the offense to which he is pleading, the plea shall be rejected by the court."

Effective December 7, 1975 (395 Mich xlvi) that provision was amended:

"(3) An Accurate Plea.

"(a) If the defendant pleads guilty, the court, by questioning him, shall establish support for a finding that he is guilty of the offense charged or the offense to which he is pleading.

"(b) If the defendant pleads nolo contendere, the court shall not question him about his participation in the crime. The court shall:

"(i) state why a plea of nolo contendere is appropriate; and

"(ii) conduct a hearing, unless there has been one, that establishes support for a finding that the defendant is guilty of the offense charged or the offense to which he is pleading."

[4] The statute provides that whenever a person pleads guilty it is the duty of the judge "to become satisfied after such investigation as he may deem necessary for that purpose respecting the nature of the case, and the circumstances of such plea, that said plea was made freely, with full knowledge of the nature of the accusation, and without undue influence. And whenever said judge shall have reason to doubt the truth of such plea of guilty, it shall be his duty to vacate the same, direct a plea of not guilty to be entered and order a trial of the issue thus formed." MCLA 768.35; MSA 28.1058.

[5] This court added:

"We have little doubt that the entry of the plea by his attorney was

In reviewing convictions on pleas of guilty accepted before the 1973 revision of rule 785, this Court followed the *Barrows* rule requiring a factual basis supporting the conclusion that a crime was committed and that defendant participated in its commission.[6]

In *People v Taylor,* 387 Mich 209, 224; 195

made with defendant's agreement. But Michigan's rule on acceptance of pleas requires that the court ascertain more about the plea than that the defendant agrees that it is expedient to so plead. The rule is designed to require reasonable ascertainment of the truth of the plea.

"This requirement was present in the statute (CL 1948, § 768.35 [Stat Ann 1954 Rev § 28.1058]) which preceded Rule No 35A. It has frequently been given effect by this Court. *People v Utter,* 209 Mich 214 [176 NW 424 (1920)]; *People v Merhige,* 212 Mich 601 [180 NW 418 (1920)]. What has been added by the rule is the mandatory requirement that the court 'examine the accused.' " *People v Barrows,* 358 Mich 267, 272–273; 99 NW2d 347 (1959).

[6] *See People v Rufus Williams,* 386 Mich 277, 284; 192 NW2d 466 (1971):

"Such action meets the requirement of 'establishing the crime and participation therein of the person pleading guilty' as required by *Barrows.*"

*See People v Butler,* 387 Mich 1, 8; 195 NW2d 268 (1972):

"Regarding defendant's claim that *People v Barrows, supra,* necessitates direct personal inquiry of the defendant for purposes of ascertaining the factual basis of the plea, defendant's counsel interrogating defendant as to how he drove the car away more than satisfies *Barrows, People v Rufus Williams, supra, People v Stearns* [380 Mich 704; 158 NW2d 409 (1968)]."

In *People v Taylor,* 383 Mich 338, 357; 175 NW2d 715 (1970), Chief Justice BRENNAN adverted to the notes of the Advisory Committee on Criminal Rules where, commenting on FR Crim P, 11 ("The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea"), it is stated: "For a similar requirement see" the Michigan statute (fn 4, *supra),* Michigan Court Rule 35A (fn 3, *supra)* and three Michigan cases, including *People v Barrows, supra.* Justice BRENNAN concluded that since no other state statutes, court rules or court decisions were cited, "the 1966 amendment of Federal rule 11 was designed to bring Federal court practice up to the standard of our Michigan practice".

*Similarly, see People v Duffield,* 387 Mich 300, 331; 197 NW2d 25 (1972); *People v Wolff,* 389 Mich 398, 412; 208 NW2d 457 (1973) (opinion of T. G. KAVANAGH, J.); *People v Armstrong,* 390 Mich 693, 698; 213 NW2d 190 (1973); *People v Kuchulan,* 390 Mich 701, 706; 213 NW2d 95 (1973); *People v Schneff,* 392 Mich 15, 23; 219 NW2d 47 (1974).

The Court of Appeals has reversed a number of pre-rule-785.[7]

NW2d 856 (1972), a plea-based conviction was reversed for the judge's failure "to conduct such an examination as to show that what the defendant actually did was indeed a crime".[7] A plea-based conviction was reversed in *People v Carlisle,* 387 Mich 269, 273; 195 NW2d 851 (1972), for failure to comply with *Barrows:*

"We reaffirm our holding in *Barrows.* No plea of

guilty-plea convictions on the authority of *Barrows* for failure to establish a factual basis. *See, e.g., People v Atcher,* 57 Mich App 148; 226 NW2d 77 (1974); *People v Westman,* 53 Mich App 662; 220 NW2d 169 (1974); *People v Fuzi,* 46 Mich App 204; 208 NW2d 47 (1973); *People v Morgan,* 40 Mich App 404; 198 NW2d 885 (1972); *People v Stewman,* 36 Mich App 643; 194 NW2d 146 (1971); *People v Gerald Jackson,* 30 Mich App 173; 186 NW2d 40 (1971); *People v Beverly Haywood,* 27 Mich App 365; 183 NW2d 399 (1970); *People v Lokatys,* 23 Mich App 633; 179 NW2d 258 (1970); *People v Thouin,* 24 Mich App 483; 180 NW2d 386 (1970); *People v Shell,* 23 Mich App 593; 179 NW2d 262 (1970); *People v Stoner,* 23 Mich App 598; 179 NW2d 217 (1970); *People v Porchia,* 21 Mich App 222; 175 NW2d 310 (1970); *People v Robert Lee Moore,* 21 Mich App 126; 174 NW2d 922 (1970); *People v Hooper,* 20 Mich App 560; 174 NW2d 173 (1969).

[7] "The provision that 'the court shall examine the accused * * * and * * * shall ascertain that the plea was * * * understandingly * * * made' requires the judge to conduct such an examination as to show that what the defendant actually did was indeed a crime or otherwise he could not understandingly plead guilty. If what he did was actually not a crime, then if he pled guilty to it, it would not be an understanding plea.

"In the instant case the judge's examination so far as the record shows was to ascertain 'You are pleading guilty because you are guilty?' This puts the burden on the defendant to know whether indeed he was legally guilty, and of what, and he might well not understand. See *People v Merhige,* 212 Mich 601 [180 NW 418] (1920). See also assertions in a recent newspaper article, for example, that defendants plead guilty in Wayne County although they believe they are innocent just to get out of the jungle that is the Wayne County jail. (Detroit Free Press, October 10, 1971.)

"In any event it is the court's duty to ascertain by its examination facts which would convince the court that indeed a crime had been committed by the defendant. Such examination is not the equivalent of a legal trial but it must objectively indicate that the court had fulfilled this obligation.

"Since the record as presented does not show the necessary examination, the defendant's plea of guilty is vacated and this case is remanded to the trial court for appropriate proceedings." *People v Taylor,* 387 Mich 209, 224–226; 195 NW2d 856 (1972).

guilty should be accepted by a trial judge until facts sufficient to establish the defendant's guilt have been set out in the record. Preferably, these facts should be brought forth through a direct examination of the accused by the trial judge at the time the plea of guilty is accepted."[8]

### III

Intent to kill is an element of the offense of murder. Haack's assertions to the judge that the shooting was an accident and that there were mitigating circumstances do not, however, negate a factual basis for his plea of guilty to second-degree murder. While Haack may not have actually intended to kill the deceased, intent to kill may be inferred by the trier of fact[9] where the natural tendency of the defendant's behavior is to cause death or great bodily harm.

"A person who kills another is guilty of the crime of murder if the homicide is committed with malice aforethought. Malice aforethought is the intention to kill, actual or implied, under circumstances which do not

---

[8] "Unfortunately, because of lack of clear precedent perhaps, in the case at bar the trial judge was confused as to who should know what. He told the defendant 'You know what happened' and 'You know whether you're guilty or not.'

"The court rule, however, requires that the *trial court* should 'know what happened' so that the *trial court* would know whether the defendant was 'guilty or not'." *People v Carlisle,* 387 Mich 269, 274; 195 NW2d 851 (1972). (Emphasis by the Court.)

[9] "The majority views—that the so-called 'presumption of malice' actually authorizes merely the drawing of an inference; and that the burden of persuasion of guilt of murder (and so the negativing of facts of mitigation or justification) beyond a reasonable doubt remains always with the prosecution—are surely the correct ones if we are to abide by the guiding principle of Anglo-American criminal justice that a criminal defendant is to be considered innocent until shown by the prosecution to be guilty beyond a reasonable doubt." LaFave & Scott, Criminal Law, § 68, p 540.

*See Mullaney v Wilbur,* 421 US 684; 95 S Ct 1881; 44 L Ed 2d 508 (1975).

constitute excuse[10] or justification or mitigate the degree of the offense to manslaughter. The intent to kill may be implied where the actor actually intends to inflict great bodily harm or the natural tendency of his behavior is to cause death or great bodily harm. * * *

"Thus, as 'malice aforethought' is now defined, a killing may be murder even though the actor harbored no hatred or ill will against the victim and even though he 'acted on the spur of the moment'." *People v Morrin,* 31 Mich App 301, 310–312; 187 NW2d 434 (1971).

The issue here is whether a factual basis has been established for the taking of a plea.[11]

In *Guilty Plea Cases,* 395 Mich 96, 128–132; 235 NW2d 132 (1975), this Court considered a number of questions concerning the application of rule 785.7, including questions arising under 785.7(3), "Determining factual basis for plea".[12] We said that on appellate review the standard to be applied in determining the adequacy of the factual basis is whether the trier of fact could properly convict on the facts as stated by the defendant. Disclaimers by the defendant during the plea tak-

---

[10] "Homicide is 'excusable' if the death is the result of an accident and the actor was not criminally negligent." *People v Morrin,* 31 Mich App 301, 310; 187 NW2d 434 (1971).

[11] A different question would be presented if the issue were one of jury instruction, whether the judge had correctly instructed the jury on accidental death *(see People v Pepper,* 389 Mich 317; 206 NW2d 439 [1973]) or the difference between the various grades of homicide *(see People v Townes,* 391 Mich 578; 218 NW2d 136 [1974]). Manifestly, a properly instructed jury would be told that intent to kill "is a permissible inference—not a mandatory presumption" *(see People v Morrin, supra,* p 319); that if the jury believed that the shooting was accidental the defendant should be acquitted; and that if mitigating circumstances were found, the defendant might be guilty of a lesser offense *(see* LaFave & Scott, Criminal Law, § 75, p 571–572, §§ 77–79, pp 583–602).

[12] *See* fn 3, *supra,* for text of rule. The standard for review of this pre-rule-785 plea should not be more stringent than the standard now in force. *People v Armstrong,* 390 Mich 693, 700; 213 NW2d 190 (1973).

ing of knowledge that a confederate had a gun (in the case of *Sanders*[13]*)* or of intent to kill (in the case of *Harrell*[14] and *Robinson*[15]*)* do not preclude acceptance of a plea since on defendant's own recital a jury could properly infer the requisite participation or intent. "A factual basis for acceptance of a plea exists if an inculpatory inference can reasonably be drawn by a jury on the facts admitted by the defendant even if an exculpatory inference could also be drawn and defendant asserts the latter is the correct inference." *Guilty Plea Cases, supra,* p 130.

Although Haack asserted the shooting was accidental, in deciding whether to accept his plea of guilty the judge could, on the strength of Haack's inculpatory statements, properly reject his disclaimer of intent to kill and his assertion that the shooting was accidental and accept his plea of guilty. On Haack's statement that he had pointed a revolver he knew was loaded at the deceased and

---

[13] Despite defendant's disclaimer of knowledge that his confederate had a gun, on his own recital a jury could properly "conclude that he and his confederate agreed to commit the crime of robbery and, whether or not the defendant was aware his confederate had a gun, that carrying or using a gun was 'fairly within the scope' of the common unlawful enterprise. *See People v Pearce,* 20 Mich App 289; 174 NW2d 19 (1969); *People v Poplar,* 20 Mich App 132; 173 NW2d 732 (1969)." *Guilty Plea Cases,* 395 Mich 96, 130; 235 NW2d 132 (1975).

[14] The defendant admitted she had shot another woman with a gun. "Under the circumstances described in her own recital, a jury could properly infer intent to kill from the fact that she shot the victim with a gun." *Guilty Plea Cases, supra,* p 130.

[15] The defendant admitted he had set fire to a building in anger causing the death of two persons:

"The court did not ask him if he intended to kill anyone when he set the fire. It is asserted that the record does not show the elements of malice and intent to kill. However, it is not necessary * * * to admit that he acted with malice or intended to kill. A jury could properly infer intent to kill, even where the defendant disclaims such intent, from evidence that he intentionally set in motion a force likely to cause death or grievous bodily harm—here setting fire to a building." *Guilty Plea Cases, supra,* p 131.

intentionally pulled the trigger, a trier of fact could properly infer intent to kill.

Before accepting a plea of guilty, the judge need not decide that a jury would convict. He may accept the plea if he finds from defendant's recital a factual basis which would support conviction and that the defendant enters his plea advisedly. A guilty plea "may be accepted even though the defendant is unsure of his guilt and even where he denies his guilt if after *careful* inquiry the judge satisfies himself that there is a substantial factual basis for the plea and that the plea represents a well-considered and well-advised choice by the defendant".[16]

Affirmed.

KAVANAGH, C. J., and WILLIAMS and COLEMAN, JJ., concurred with LEVIN, J.

FITZGERALD, LINDEMER, and RYAN, JJ., took no part in the decision of this case.

---

[16] (Emphasis by the author.) *People v Coates,* 32 Mich App 52, 70; 188 NW2d 265 (1971) (LEVIN, J. dissenting), quoted in *Guilty Plea Cases, supra,* fn 2, pp 133–134.

*Contrast People v Stoner,* 23 Mich App 598, 608; 179 NW2d 217 (1970), where the defendant asserted he was unable to provide an accurate statement of the facts because his recollection was unclear due to intoxication at the time the offense was alleged to have been committed.